Fuld, J.
Suing on behalf of themselves and “ all other Negro citizens of,New York * * * similarly situated”, the four plaintiffs, citizens of the United States and residents of this State, have brought this class action for injunctive and declaratory relief against nine labor unions in the construction industry and various officials of the State and of the City of New York. They challenge the expenditure of public funds by the State and City on certain large public works projects in New York City on which, the complaint alleges, qualified Negroes are unlawfully denied employment and opportunity for employment because the contractors on such projects obtain virtually all their labor from the defendant unions and the latter exclude Negroes from their membership and apprenticeship programs solely on the basis of race and color.
In addition to a judicial declaration that the expenditure of public funds for such projects is in contravention of the equal protection clauses of the Federal and State Constitutions (U. S. *127 Const., 14th Arndt.; N. Y. Const., art. I, § 11), as well as of this State’s statutes banning discrimination by reason of race or color (Civil Eights Law, § 43; Executive Law, § 296; Labor Law, § 220-e; Administrative Code of City of New York, § 343-8.0; Penal Law, §§ 700, 701, 514), the plaintiffs seek to compel the defendant public officials to enforce such statutes and to enjoin them from paying out any moneys on the projects unless and until the discriminatory practices are halted. An injunction is also .sought against the continuance of certain alleged discriminatory practices by the defendant unions in their apprenticeship programs.[1]
Joined with the class action is a cause of action asserted by one of the plaintiffs, as a taxpayer, pursuant to section 51 of the General Municipal Law, against the defendant municipal officers to enjoin them from “ causing public injury ” by “ sanctioning and facilitating the exclusion of qualified Negroes from the possibility of public employment solely because of their race ’ ’.
The only individual grievances asserted by the four plaintiffs are that they were denied admission to membership or apprenticeship programs by two of the unions named as defendants. There is no allegation that any of the plaintiffs were denied admission to any of the other defendant unions or that they ever sought, or were ever refused, employment on the construction projects specified in the complaint or on any other public construction projects in the City or State. Nor is it alleged that the plaintiffs would have been employed on any of the projects but for the charged discrimination. There is likewise no allegation that any complaint of the alleged discrimination or any demand for corrective action was ever made to any of the defendant public officials.
The plaintiffs moved for a preliminary injunction, and the various defendants made cross motions for dismissal of the complaint. The court at Special Term, in the expressed hope that the parties would work out a solution, denied all motions *128 without prejudice. The hope not having materialized, the defendants appealed to the Appellate Division from so much of Special Term’s order as denied their cross motions, and that' court, in an opinion by Justice Stevens, unanimously reversed and dismissed the complaint1 ‘ without prejudice to such further action as plaintiffs may be advised to pursue ”. The plaintiffs have appealed to this count from the order of dismissal.
The Appellate Division held that no cause of action was stated against the defendant public officials since the discriminatory practices of the unions were not chargeable to such officials and, in addition, there was no showing that the latter had refused to take any requested remedial action. The court also held that the complaint could not stand against the defendant unions because of the failure to join as defendants me several contractors whose rights would be directly affected by the relief sought. ,
Accepting the allegations of the complaint as true, as of course we must for the purposes of this appeal, we are confronted with a grave and continuing breach by the defendant unions of the laws and declared policy of this State against the reprehensible practice. of discrimination on racial grounds in the area of employment and employment, opportunity. Section 43 of the Civil Eights Law specifically forbids any labor organization to deny membership to any person, directly or indirectly, by reason of his race, creed, color or national origin. Violators of the section are subject to a civil action for damages by the aggrieved person, as well as to criminal prosecution for a misdemeanor (Civil Rights Law, § 41). Other criminal penalties are also provided by the Penal Law (§§ 700, 701, 514).
The acts here charged to the defendant unions have also been denominated as " unlawful discriminatory practices” by the Executive Law (§ 296), and a special agency, the State Commission for Human Eights (formerly the State Commission Against Discrimination), has been created and empowered to take appropriate action to eliminate and prevent, any such practices by cease and desist orders enforeible by the courts (§§ 297, 298). In addition, the Labor Law (§ 220-e) and the New York'City Administrative Code (§ 343-8.0) mandate the inclusion in public works contracts of prohibitions against dis *129 crimination in employment on the basis of race, creed, color or national origin. The Labor Law (§ 220-e, solids, [cl, [cl]) authorizes the imposition of prescribed penalties in the event of such discrimination and termination of the contract upon a second or any subsequent violation, and the Administrative Code (§ 343-8.0, subd. c) similarly treats such discrimination as “ a violation of a material provision of the contract.”
However, the remedies here invoked by the plaintiffs for the "grievances asserted in the complaint are not open to them and this class action cannot be maintained. In our view, the plaintiffs have other adequate remedies available.
"We note, at the outset, that the four plaintiffs do not have standing to bring a representative action on behalf of all other members of the indeterminate class of Negro citizens who may have been the victims of the alleged discriminatory practices. While this class action is purportedly brought pursuant to CPLR 1005 (a), that section is merely a verbatim restatement of former section 195 of the Civil Practice Act; and, as this court explicitly announced in construing the latter section, a class action may not be maintained where the wrongs asserted are individual to the different persons involved and each of the persons aggrieved “ may determine for himself the remedy which he will seek ” and may be subject to “ a defense not available against others ”. (Society Milion Athena v. National Bank of Greece, 281 N. Y. 282, 292; see Brenner v. Title Guar. & Trust Co., 276 N. Y. 230, 236-237.) “ Separate Avrongs to separate persons, though committed by similar means and even pursuant to a single plan,” we declared in the Society Milion Athena case (281 N. Y., at p. 292), “do not alone create a common or general interest in those Avho are wronged.”
In the present case, it is quite evident, the allegations of discriminatory practices against the members of the class purportedly represented by the plaintiffs avouM give rise to charges of separate wrongs against the several members of such class; each such person would be free to determine for himself the remedy for redress of his grievance—Avhich might take the form of a complaint to the State Commission for Human Rights or an action for damages under the Civil Rights Lrav, in contradistinction to the remedies here invoked; each individual claim *130 might be subject to defenses not available against others; and, in general, determination of the merits of each claim would turn on the particular facts and circumstances involved.
The plaintiffs thus have standing* here to complain only of grievances to which they have individually been subjected. (See Brenner v. Title Guar. & Trust Co., 276 N. Y. 230, 238, supra; McCabe v. A., T. & S. F. Ry. Co., 235 U. S. 151, 162.) However, although the complaint mqy thus be sufficient to show that two of the defendant unions have unlawfully denied them admission to membership or apprenticeship, there is, as noted, no showing that any of the plaintiffs .sought or were discriminatorily denied admission to any of the other defendant unions or were refused employment on any public construction project or, for that matter, would have been so employed if admitted to one of the unions.
The crux of the complaint as against the defendant public officials is that they have, in effect, condoned unlawful discrimination in employment on public construction projects by dealing with contractors who obtained their labor force from unions which wrongfully exclude qualified Negroes from their membership and apprenticeship programs. Manifestly, however, the discriminatory practices of the unions are in no way chargeable to the State or City, since such unions are neither “ organs of the State itself” nor “repositories of official power.” (See Nixon v. Condon, 286 U. S. 73, 88; see, also, Burton v. Wilmington Pkg. Auth., 365 U. S. 715, 721-722; Williams v. Yellow Cab Co. of Pittsburgh, Pa., 200 F. 2d 302, 307, cert. den. sub nom. Dargan v. Yellow Cab Co., 346 U. S. 840.) Nor are there any facts alleged in the complaint from which it could be inferred that any State or City officials have been directly involved or have knowingly acquiesced in any discrimination in employment on the part of any of the unions or contractors engaged on the construction projects. There is, indeed, not the slightest sug*gestion that any complaint or demand for corrective action was ever made to any of such officials, much less rejected by them.
Indeed, it is questionable whether the complaint makes an adequate showing that any of the contractors were themselves knowing parties to any unlawful discriminatory employment practices. While it is alleged that soone of the defendant unions had collective bargaining agreements with contractors whereby *131 the latter were “ required to obtain labor from union hiring halls ”, there is nothing to indicate that any of these contractors had knowledge or notice that the unions were unlawfully discriminating against Negroes in referring prospective employees. In the absence of such knowledge or notice, the mere fact that ah employer obtains his labor force by referral from a union would not render him chargeable with involvement in the union’s discriminatory practices. (See Lummus Co. v. N. L. R. B., 339 F. 2d 728, 737-738; see, also, N. L. R. B. v. Southern Stevedoring & Contr. Co., 332 F. 2d 1017, 1019; Teamsters Local v. Labor Bd., 365 U. S. 667.)
A further deficiency in the complaint is that what the plaintiffs are, in essence, seeking is judicial intervention to control the exercise of the discretion vested in the defendant public officials in the administration of the various public construction projects. The most that can be charged against such officials under this complaint —and the Appellate Division noted this — is that they have failed to invoke penalties authorized by the construction contracts for discriminatory employment practices which the plaintiffs believe were committed by the contractors. These are precisely the areas of management of public affairs and discharge of public duties where judicial intervention in the ordinary case is least fitting.
It is the settled policy of the courts not to review the exercise of discretion by public officials in the enforcement of State statutes, in the absence of a clear violation of some constitutional mandate. (See People v. Ballard, 134 N. Y. 269, 293; Matter of Lewis v. Lefkowitz, 32 Misc 2d 434, affd. 17 A D 2d 778.) No basis is here shown for charging the State or City with being a party to the denial to the plaintiffs of the equal protection of the laws in violation of Federal or State constitutional guarantees. Neither the State nor the City has here either affirmatively sanctioned any discriminatory practices by statute or announced policy or, indeed, even knowingly acquiesced therein. (Cf. Peterson v. Greenville, 373 U. S. 244; Lombard v. Louisiana, 373 U. S. 267.) Nor can the case be analogized, as urged by the plaintiffs, to a situation where discrimination on the part of a lessee of a portion of a State-owned and operated public enterprise becomes chargeable to the State itself *132 by reason of particular circumstances which stamp the latter as a “ joint participant ” with the lessee and demonstrate its essential “interdependence” with such lessee. (See Burton v. Wilmington Pkg. Auth., 365 U. S. 715, 725, supra.)
Moreover, the extraordinary remedies here sought by the plaintiffs — of injunctive and declaratory relief — are available “only where resort to ordinary actions or proceedings would not afford adequate relief.” (Rockland Light & Power Co. v. City of New York, 289 N. Y. 45, 51; see, also, Goodman & Co. v. New York Tel. Co., 309 N. Y. 258, 266; Kane v. Walsh, 295 N. Y. 198, 205-206.) It may well be, as the plaintiffs evidently believe, that judicial proceedings of the ordinary type will not suffice to break the pattern of discrimination which, it is alleged,: permeates the construction industry. A full and adequate remedy is, however, available to the plaintiffs by way of resort to the State Commission for Human Rights and theré is, accordingly, no warrant for invocation of the aid of equity or for the granting of declaratory relief. (See Goodman & Co. v. New York Tel. Co., 309 N. Y. 258, 266, supra; Kane v. Walsh, 295 N. Y. 198, 206, supra.)
It was, undoubtedly, the need for a programmatic enforcement of the anti-discrimination laws which prompted the Legislature to create the State Commission for Human Rights and to vest it with broad powers to eliminate specified “ unlawful discriminatory practices ” (Executive Law, art. 15, §§ 290-301; see Matter of Holland v. Edwards, 307 N. Y. 38, 43 44). Included within the legislative proscriptions is not only the practice of discrimination by a labor organization on the basis of race, creed, color or national origin in the admission of persons to membership therein but also discrimination on such basis by a labor organization or air employer or any joint labor-management committee in the admission of persons to training, guidance or retraining programs (Executive Law, § 296, subd. 1, par. [b]; subd. 1-a). Indeed, as the result of a recent amendment, it is noAV an uulawfnl discriminatory practice “ To select persons for an apprentice training program registered with the state of New York on any basis other than their qualifications, as determined by objective criteria which permit review ’ ’ (subd, 1-a, par. [a], added by L. 1964, ch. 948, § 1).
*133 The Commission is directed to investigate all complaints of unlawful discriminatory practices filed with it and to attempt to eliminate such practices in the first instance by conference, conciliation and persuasion. If this approach fails, the Commission is authorized to proceed to a hearing on the complaint and to take testimony, subpoena witnesses and confer immunity upon witnesses pleading their privilege against self incrimination. If the Commission finds upon all the evidence at such hearing that a party has engaged in any unlawful discriminatory practice as defined in the law, it is empowered to issue an order requiring such party not only to cease and desist therefrom but to take such affirmative action as the Commission deems appropriate and to report on the manner of compliance (Executive Law, §§ 295, 297). The Commission is further authorized to initiate proceedings for the judicial enforcement of its orders (§ 298). It also has the power to promulgate rules and regulations to carry out the provisions of the law and the policies formulated by it (§§ 294, 295, subd. 5).
The remedy which the plaintiffs seek in their class action is, in fact, one which the State Commission, rather than the courts, is in a far better position to grant. Indeed, the Commission has only recently, upon the complaint of the State Attorney-G-eneral, issued a comprehensive cease and desist order against racial discrimination in the apprenticeship program of one of the very unions named herein as a defendant-—-Local No. 28 of the International Association of Sheet Metal Workers — and judicial enforcement of that order has been granted by the Supreme Court. (See Matter of State Comm. for Human Rights v. Farrell, 43 Misc 2d 958.) Therefore, even though the complaint, as noted, may properly be regarded as asserting grievances against the two unions which, it is alleged, actually denied the individual plaintiffs admission to membership or apprenticeship, the latter have an adequate remedy available by way of resort to the State Commission for Human Rights. There is, accordingly, no warrant for invoking the aid of equity even with respect to these two unions. (See Kane v. Walsh, 295 N. Y. 198, 206, supra.)
This brings us to the cause of action predicated on section 51 of the Heneral Municipal Law. This, too, is legally insufficient. Redress may be had in such a taxpayer’s action “ only when *134 the aets complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes.” (Kaskel v. Impellitteri, 306 N. Y. 73, 79; See, also, Stahl Soap Corp. v. City of New York, 5 N Y 2d 200, 204; Western N. Y. Water Co. v. City of Buffalo, 242 N. Y. 202, 206; Altschul v. Ludwig, 216 N. Y. 459, 467.) It is quite clear that no suoh showing is here made. Furthermore, insofar as the complaint challenges the manner in which the City officials are administering concededly legal construction contracts, it runs afoul of the principle that, in a taxpayer’s action, “ The courts do not sit in judgment upon questions of legislative policy or administrative discretion.” (Campbell v. City of New York, 244 N. Y. 317, 328; see, also, Kaskel v. Impellitteri, 306 N. Y. 73, 79, supra.) In any event, where, as here, the taxpayer has not even called upon the public officials to discharge what he claims to be their duty, he can hardly ask the courts to order them to so act.
The defendants advance a number of other arguments to support dismissal of the complaint but, in light of what we have written, we find it unnecessary to consider them.
The order of the Appellate Division should be affirmed, without costs.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke, Scileppi and Bergan concur.
Order affirmed.

. In their prayer for relief, the plaintiffs also ask that the unions be required to submit to the court, every 30 days, details concerning their apprentice training programs, and that the court retain jurisdiction of the action until the defendant public officials and their successors have taken all necessary measures to eliminate discrimination in employment, on the basis of race or color, on the construction projects mentioned in the complaint.