Walter J. Mahoney, J.
This is an article 78 CPLR proceeding initiated by Richard S. Usen, guardian ad litem for the petitioner Shirley Mitchell, said proceeding having been commenced by an order to show cause on May 24, 1972.
The respondents are various governmental agencies, both State and local.
The petition alleges that this is a class action and seeks declaratory judgment on behalf of the petitioner and members of the class, adjudging them entitled to receive certain adequate care, treatment and education that the respondents allegedly are obligated by law to provide and, allegedly respondents have arbitrarily and capriciously failed, or refused to meet their obligations relative to the petitioner and members of the class.
The petition also seeks an order from the court directing the respondents to submit to the court plans for care and treatment of the petitioner and members of the class she allegedly represents.
The motion to intervene is made on behalf of Mrs. Pearline Kelly relative to her seven-year-old son, Donald Kelly, based on an affidavit submitted by Mrs. Kelly in which she alleges that her son is in need of certain special care and treatment and she, in effect, seeks similar relief to that requested on behalf of Shirley Mitchell.
The respondents have filed answers basically denying the allegations of the petition and raising certain objections in point of law which, in effect, constitute a motion to dismiss that petition.
FACTS
Shirley Mitchell is a 15-year-old child who admittedly has a long history of mental retardation apparently aggravated by behavioral disorders.
*635 Shirley, subsequent to her parents’ separation was placed in several foster care homes but returned to the custody of her mother in 1968.
Thereafter she was referred for placement to the West Seneca State School but said referral was rejected because the school lacked an appropriate program for one of her needs and capacity.
It is apparent that Shirley’s adjustment to school and family life continues, to. deteriorate inasmuch as she was brought to Family Court on several occasions because of alleged ungovernable behavior.
The staff of Family Court of Erie County have indicated that Shirley has an I. Q. of 52 and that she suffers from certain stated emotional and behavioral problems. As a result of this the Family Court psychiatrist apparently recommended placement in an appropriate institution for Shirley.
In 1971 the Judge in Family Court adjudicated Shirley a person in need of supervision, placed her on probation for one year, after which she was returned to her home because an appropriate placement was unavailable. Shortly thereafter, she ran away from home for approximately three months.
Thereafter and on March 1, 1972 she was brought to the Family Court by a Buffalo police officer and a petition was filed against her as a juvenile delinquent based upon two alleged instances of shoplifting.
The hearing was held on this petition before the Hon. J. Douglas Tbost, Judge of Family Court of Erie County, on March 3, 1972. He reserved decision and directed the Family Court staff to obtain an appropriate placement for Shirley and apparently to this date Family Court has been unsuccessful in complying with the direction of the court.
From the date of the above hearing to June 30,1972 the young lady was remanded to the Family Court Detention Center for Girls.
It is significant that early in June of 1972, shortly after the present proceedings were commenced, a meeting of representatives of the respondents and others evolved an interim plan for the care and treatment of Shirley. Under this plan a division of Youth Home for Girls on Linwood Avenue in the City of Buffalo agreed to provide residential care, and the Community Services Division of West Seneca State School agreed to provide backup services.
During an introductory visit to the afore-mentioned home Shirley ran away and about a week later was picked up and *636 returned to the Family Court detention facility. On June 30 Family Court Judge Trost released Shirley to the custody of her mother, Dilsie Mitchell.
The affidavit here submitted of the Hon. J. Douglas Trost, a respected Judge of the Family Court of Erie County, is significant, since he affirmatively asserts that scores of children within the jurisdiction of the Family Court of Erie County are afflicted with disabilities similar to the petitioner and the intervenor (to be discussed later): and that no appropriate program of care, treatment and education is available.
It is particularly noteworthy and must be stressed at this point that Judge Trost’s affidavit further indicates that a lack of appropriate care, treatment and education is causing irreparable injuries to the petitioner and others similarly situated.
The party attempting to intervene in this proceeding is one Donald Kelly, a seven-year-old boy who apparently suffered brain damage from lead poisoning as a result of which he has severe learning disabilities and emotional disorders which cause severe tantrums and various enumerated forms of abnormal behavior. It is alleged that Donald has physically attacked schoolmates and neighborhood children. Donald’s mother alleges that the child must be kept under constant supervision because of the fear that he will harm someone or destroy personal property.
It is significant to point out that Donald was expelled from kindergarten in the fall of 1970 because of his abnormal behavior and was again expelled from the first grade in the fall of 1971 for the same reason. Apparently since November of 1971 his formal education has been limited to home tutoring.
At this point it should also be noted that, relative to the proposed intervener, the Children’s Psychiatric Center at West Seneca, New York, refused to provide its services, because Donald requires long-term care and the center is a facility for short-term intensive care not to exceed six months. Also, the Child Care Center for the Children’s Aid Society refused to accept Donald because of his abnormal behavioral problems requiring more supervision than that facility is able to provide.
This proceeding could be easily disposed of by granting respondents’ motion to dismiss based upon various premises raised in their answers. This, however, we feel under the unique circumstances set forth in the petition would be an abrogation of our duties even though it may be contended that we are, at least partially by this memorandum, usurping certain legislative prerogatives.

*637
It is axiomatic that courts cannot and should not substitute their judgment for that of the legislative branch of government. It is also true that courts cannot appropriate money, or build institutions or provide shilled personnel in order to provide care that is apparently mandated for youngsters in the desperate plight of the petitioner and the proposed intervenor. -

The motion of the intervenor Kelly is hereby granted. In view of the inability of the respondents, despite their best intention to care for the petitioner and intervenor and in view of the affidavit of Judge Trost substantiating the inability of society as represented by the respondents, to care for these desperately ill children, some relief must be considered.
Several sections of the statute law of the State of New York should be mentioned at this time relative to the obligation of the respondents to care for these children and those similarly situated. Subdivision 1 of section 131 of the Social Services Law of the State of New York states as follows: “ It shall be the duty of .social services officials, insofar as funds are available for that purpose, to provide adequately for those unable to maintain themselves, in accordance with the requirements of this article and other provisions of this chapter.” (Italics supplied).
The words italicized above should be kept in mind in relation to section 395 of the same law which states: A public welfare district shall be responsible for the welfare of children who are in need of public assistance and care, support and protection, residing or found in its territory, insofar as not inconsistent with the jurisdiction of the family court.” (Italics supplied).
It should be reasserted here that a Judge of the Family Court has found that facilities available to him are unwilling or unable to care for children in question.
The afore-mentioned affidavit of Family Judge Trost states: eighth: That your deponent has been informed that all efforts to place Shirley Mitchell have been rejected.
££ ninth : That in the course of my duties as Family Court Judge, your deponent encounters dozens of children each year who require long term institutionalized care and treatment because of mental retardation and behavioral disorders; and the placement of such children in programs of adequate care has been a chronic problem because of the selective admission policies presently in effect in all county and state institutions.
££ tenth : That by reason of the absence of appropriate programs for care and treatment Shirley Mitchell’s condition has deteriorated over the past two years, and the damage to this *638 child may be irreparable, and certainly the harm to this child is continuing by reason of her present placement in Family Court detention, which is primarily a facility for short time custody of children pending referral.
“eleventh: That the circumstances of Shirley Mitchell are not unique and that dozens of other children under similar disabilities are presently suffering irreparable harm because they have been returned to their parents where they receive no treatment, or they have been incarcerated in the state training school, or they have been placed in an inappropriate program.”
It would appear from the foregoing that the present proceeding must, therefore, be treated as a class action pursuant to the appropriate provisions of the CPLR.
Relative to handicapped children, paragraph (a) of subdivision 4 of section 398 of the Social Services Law is also significant when it states, in effect, that a Commissioner of Public Welfare must ‘ obtain admission to state and ether suitable schools, hospitals, other institutions, or care in their own homes or in family free or boarding homes or in agency boarding homes or group homes for such children in accordance with the provisions of the mental hygiene law, education law and acts relating to the family court:”
It should be observed here that both the petitioner and intervener now reside with their mothers, and are recipients of aid to families with dependent children, which program is administered by the Erie County Department of Social Services. It would therefore appear that the respondent Sipprell certainly has some obligation to attempt to provide care and treatment appropriate to the needs of the petitioner and intervener.
Subdivision 1 of section 24 of the Mental Hygiene Law states as follows: “ All mentally disabled persons not in confinement under criminal proceedings who are unable to care for and maintain themselves or who are in need of care and treatment in a hospital or institution or whose mental or neurological condition is. such as to endanger his own person, or the person and property of others, shall, without unnecessary delay, be properly and suitably cared for and maintained as provided in this chapter.” (Italics supplied).
"XCarious pertinent statutes of this .State then go on to provide that the Department of Mental Hygiene is responsible for the provision of sufficient institutions and facilities for the care and. treatment of the mentally disabled of the State.

There may be some who question the wisdom, or the ability,, of the State to take on the obligations mentioned above, but 
*639
since they are already stated in the statute, approved by the legislative and executive branches of government, we have no alternative but to interpret the obligations imposed by the aforementioned statutes.

The proceedings before us are amply conclusive that all the respondents have notice of the conditions that have denied these children, and those in their class, the care which the Legislature has apparently mandated for them, and neither the judicial branch of government nor any -other can shirk its obligation.
In view of the existing statute law of this State, government must, unless the statutes are repealed, provide the facilities and services necessary for the care of these children and others so situated.
Many other sections of the law of this State, all too numerous to enumerate here, provide certain obligations on the part of one or all of the respondents to provide some of the services necessary for the care of these children, and it seems imperative that some means be provided whereby these special needs of these individuals bring together the diverse jurisdictions of Social Services, Mental Hygiene, Education and Family Court, in both the local, county and State levels.
It is too obvious to be mentioned, at length that all the respondents are under clear obligation to co-operate and to co-ordinate their respective services, -one with the other, in order to properly meet the special needs of the petitioner and intervenor and members of the class.
Various other points raised by the respondents need not be commented upon in this memorandum in view of what we believe to be a clear legal obligation upon the part of all respondents to co-operate so as to provide adequate facilities and programs so that these children and others -similarly affected will not be a menace to themselves and to society as a whole.
We find no merit to the contentions of the respondents relative to venue, -since the respondent Nyquist as State Commissioner of Education is hereby eliminated as a party.
The memorandum submitted by the County Attorney deserves special commendation and can in a sense together with pertinent case law be pointed to as that which this court hopes to accomplish. In the conclusion of said memorandum the County Attorney stated, “ It is also clear that each of the respondents share a genuine concern for the plight of Shirley Mitchell and others like her. It is our hope that constructive action will be taken by each of the respondents to make plans for and provide treatment in these situations
*640 In view of the foregoing the respondents’ motion to dismiss is denied and the petitioner’s is granted, but only .with the following conditions:
1. Declaring that the said proceeding may proceed as a class action pursuant to CPLR 1005;
2. That petitioner, Shirley Mitchell, and each member of the class is entitled to receive adequate care, treatment and education pursuant to the present .statutes in the State of New York;
3. That each and every one of the respondents herein have failed or refused to provide essential care, treatment and education and mental health services to petitioner, the intervenor, and members of the class, all contrary to the law governing such individuals;
4. That the respondents submit to the court within 20 days a plan for the temporary care and treatment, and provision for the education and mental health services for Shirley Mitchell;
5. That the respondents submit to the court within 60 days a plan for the care and treatment and provision for the education and mental health services for Shirley Mitchell over the next five years. The same provision to apply in behalf of intervenor Kelly.
In view of the extenuating circumstances mentioned in the pleadings of the respondents, and cognizant of the practical difficulties involved in attempting to find the solution to the problems that brought about this proceeding, we do not at this time provide any mandate relative to members of the class represented by the petitioner and intervenor.