RICHARD S. USEN, as Guardian ad Litem of SHIRLEY MITCHELL, an Infant, Petitioner, on Behalf of Herself and All Others Similarly Situated, Respondent, *v.* GEORGE G. SIPPRELL, as Commissioner of Social Services, et al., Appellants.

Fourth Department, April 13, 1973.

*Louis J. Lefkowitz*, Attorney-General (*Rose LaMendola* and *Ruth Kessler Toch* of counsel), for all State appellants.

*James L. Magavern*, County Attorney (*Samuel S. Rabkin* of counsel), for all County appellants.

*John J. Barone* for Erie County Department of Social Services.

*Anthony Manguso, Corporation Counsel (Herbert R. Johnston, Jr.,* of counsel), for City of Buffalo, appellant.

*Magavern, Magavern, Lowe & Beilewech (William J. Magavern, II,* of counsel), for Stanley R. Platman.

*Legal Aid Bureau of Buffalo, Inc. (Michael A. O'Connor* of counsel), for respondent.

WITMER, J. By guardian ad litem, Shirley Mitchell, 15 years of age, filed a petition in the Supreme Court of Erie County in May, 1972 naming as respondents George G. Sipprell, Commissioner of Erie County Department of Social Services; Abe Lavine, Commissioner of New York State Department of Social Services; Alan Miller, Commissioner of New York State Department of Mental Hygiene; Louis Huzella, Director of West Seneca State School, West Seneca, New York; James J. Warde, Commissioner of Erie County Department of Mental Health; Stanley R. Platman, M.D., Executive Director of Community Mental Health Center in Buffalo General Hospital; Harry J. Stewart, Superintendent of Detention of Erie County Family Court; Board of Education of Buffalo Public School Department and Joseph R. Manch, Superintendent of Schools of Buffalo School Department. Alleging that she represents all indigent mentally handicapped children in Erie County having " emotional instability which causes acting out, inappropriate conduct and occasional episodes of uncontrolled behavior ", petitioner brings the proceeding under CPLR 1005 as a class action for their benefit. She alleges that approximately 3% of the children with whom Erie County Family Court comes in contact annually " suffer from emotional and mental handicaps; and that placement of children with such handicaps has been a chronic problem for institutional social workers employed by Family Court; and such children are released and receive no treatment, or they are incarcerated in state training school for juvenile delinquents, or they are referred to an institution with an inadequate program for care and treatment." It is alleged that in June, 1963 petitioner was adjudicated a neglected child and placed in several foster care homes, and that in May, 1968 she was returned to the custody of her mother; and that petitioner has a long history of belligerent conduct, emotional instability and intellectual handicaps. By reason thereof for three years from November, 1968 an application was pending for the placement of petitioner in West Seneca State School, after which the application was

rejected by that school on the ground that its staff did not have an adequate program and could not provide adequate supervision for petitioner. In June, 1971 petitioner was evaluated by the Erie County Family Court psychologists, who determined that she has an I.Q. of 52 and hence is "mentally defective"; the Family Court psychologists diagnosed petitioner as subject to "adjustment reaction of mid-adolescence with mental retardation", and recommended that she be institutionalized; but instead she "was returned to her home because no institution offers a program appropriate to her needs." In November, 1971 Erie County Family Court adjudicated petitioner a person in need of supervision, placed her on probation for one year and returned her to the custody of her mother "because no appropriate institutional placement was available" for her. Soon thereafter petitioner ran away from home; and on March 1, 1972 a petition was filed in Erie County Family Court alleging that by reason of two incidents of shoplifting petitioner is a juvenile delinquent. That court directed its institutional social workers to refer petitioner to an appropriate placement. They referred petitioner again to West Seneca State School, the authorities of which conferred at length on the matter and in May, 1972 declined to accept petitioner on the ground that West Seneca State School does not have an appropriate program for petitioner's needs.

It is alleged that as a result "petitioner remains incarcerated in Family Court Detention because her past history indicates (that) she would run away from home if returned to her mother, and there is no institution which will accept" her; that the Family Court Detention Center is intended only for short-term custody pending referral; that it lacks adequate facilities for therapy, educating and counseling handicapped children, and that petitioner has been detained therein longer than any other child. It is alleged that petitioner and others of her class require placement in a facility equipped to provide long-term residential care, education and treatment; that no such facility presently exists; and that petitioner and others of her class suffer irreparable injury by reason of that lack. Petitioner asserts that her present confinement by Family Court violates her rights (1) against cruel and unusual punishment, (2) to due process and equal protection, (3) to care and treatment secured by article XVII of the New York State Constitution, and by the New York State Mental Hygiene Law, Social Services Law, Education Law and Family Court Act; that respondents are charged by said laws to furnish to petitioner her required treatment, and that

each has arbitrarily and capriciously refused and failed to perform his duty in these respects.

Recognizing the absence of any existing facility for her care and treatment, petitioner asks in this article 78 proceeding that respondents be required to submit to the court within 15 days a plan for her temporary care for treatment and within 60 days a plan for her care, education and treatment during the period of her minority and also for the care, education and treatment of all members of her class.

Pearline Kelly moved in behalf of her seven-year-old son, Donald, to intervene so that suitable relief might be granted for his care, education and treatment. She alleges in her moving papers that he is one of her six minor children, living with her upon public assistance; and that he is extremely hyperactive, aggressive and destructive and " may be capable of inflicting serious injury if not closely supervised by an adult "; that his " behavioral disorders present a special danger for " the one-month-old child of his minor sister, both of whom reside in the household; that he has " severe perceptual and learning problems " and " was totally unable to interact with other children at the Child Care Center " of the Children's Aid Society in Buffalo, New York and " went into a completely uncontrolled temper tantrum for no apparent reason "; and that although it was recommended that he be referred to " a long-term residential program and a tightly structured school program ", the said Child Care Center declined to accept Donald on the ground that it lacks appropriate services for his special needs, and that no appropriate service for his needs exists in Erie County.

Respondents' answers admit the essential substantive allegations of the petition and intervenor's affidavit with respect to petitioner's and intervenor's needs and the lack of existing facilities for their care and treatment. Several defenses in law are raised. Special Term has swept them all aside, granted the motion to intervene, upheld the right of petitioner to maintain the proceeding as a class action, granted judgment to petitioner and intervenor substantially as demanded in the petition and affidavit, and retained jurisdiction for further action upon receipt of the ordered temporary and permanent plans for the care, education and treatment of petitioner, intervenor and all members of the class.

Upon this appeal respondents present several issues of law. It is urged that this proceeding cannot be maintained at this time because petitioner and intervenor have failed to exhaust their administrative remedies. In view of the admissions that

no respondent has a facility adequate for the care of the petitioner or intervenor, and the several rejections of them, and the contention that respondents are practically and legally required to co-operate in order to work out a suitable plan or plans for the special care of petitioner and intervenor, it would appear to be "an exercise in futility" for the court to dismiss this proceeding for lack of exhaustion of administrative remedies, and we decline to do so.

Several respondents contend that they are improperly joined as parties to this proceeding. For example, Dr. Warde, Commissioner of Erie County Mental Health, argues that his actions are not reviewable in an article 78 proceeding because article 11 of the Mental Hygiene Law requires approval by the Erie County Legislature for mental health programs of his department and that the law only encourages but does not mandate local government involvement in mental hygiene activities. Nevertheless, insofar as the county has entered upon such activities wherein Dr. Warde may act without further consultation with or action by the County Legislature, there may be appropriate areas in this proceeding for response by Dr. Warde as such Commissioner, and we believe that he is a proper party herein.

Respondent, Dr. Stanley R. Platman, Director of Community Mental Health Center of the Buffalo General Hospital, however, stands on different footing. That Health Center is a private facility under contract with the County of Erie to provide the mental health services for which the county may see fit to bargain. The court cannot properly order Dr. Platman, in behalf of the Health Center, to perform services for which the county has not contracted. There is no suggestion that Dr. Platman as Director of the Health Center would decline to perform any service within the capability of the Center for which the County of Erie should contract. Dr. Platman's motion for dismissal of these proceedings as against him should, therefore, be granted.

Respondents contend that this is not a proper case for a class action and that Special Term erred in entertaining it as such. We agree. CPLR 1005 (subd. [a]) provides that a class motion may be maintained "Where the question is one of a common or general interest of many persons". The general language of the statute has been construed so as to limit its application to persons who have a common grievance and as to which grievance only a common defense may be asserted (*Hall* v. *Coburn Corp. of Amer.*, 26 N Y 2d 396; *Gaynor* v. *Rockefeller*, 15 N Y 2d 120, 129; *Society Milion Athena* v. *National Bank of Greece*, 281 N. Y. 282, 292–294; *Christman* v. *Skinner*, 38 A D 2d 884). In

this case the class is far too broad and indefinite to be encompassed by the statute, for it includes all indigent minor, mentally retarded, handicapped, violent and emotionally disturbed persons, as to whom various unrelated remedies or treatments may be applicable, and separate defenses may well be asserted against the grant of the relief requested in behalf of various persons for whom the proceeding is brought. Indeed, a determination that all such persons constitute a class might well limit the rights of persons alleged to be represented herein. As we had occasion to state in *Christman* v. *Skinner* (38 A D 2d 884, *supra*) "varying facts may present substantially different issues which do not lend themselves to anticipatory determination." The "closely associated relationships growing out of trust, partnership or joint venture, and ownership of corporate stock" wherein unity of interest for class actions has more often been found (see *Hall* v. *Coburn Corp. of Amer.*, 26 N Y 2d 396, 402, *supra*) do not exist here. "A class action may not be maintained where the wrongs asserted are individual to the different persons involved and each of the persons aggrieved ' may determine for himself the remedy which he will seek ' and may be subject to ' a defense not available against others ' " (*Gaynor* v. *Rockefeller*, 15 N Y 2d 120, 129, *supra*).

Accordingly, that part of the judgment which sustains the proceeding as a class action should be reversed.

It remains to consider whether it was within the power of Special Term to order respondents to devise temporary and long-term plans for the care, education and treatment of petitioner and intervenor. The relief sought is in the nature of mandamus, whose function is to "enforce an administrative act positively required to be done by a provision of law " (*Matter of Walsh* v. *La Guardia*, 269 N. Y. 437, 441; CPLR 7803, subd. 1). "A mandamus order may issue only for the enforcement of a clear legal right; and even after such right has been established, the court must determine whether, in the exercise of a sound discretion, it should grant or withhold the order " (*Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464, 469; see, also, *Matter of Pruzan* v. *Valentine*, 282 N. Y. 498, 501). "Mandamus is an extraordinary remedy and the judiciary is loathe to interfere with the executive department of the government in the exercise of its official duties, unless some specific act or thing which the law requires to be done has been omitted " (*Matter of International Ry. Co.* v. *Schwab*, 203 App. Div. 68, 74 and 878, app. dsmd. 235 N. Y. 562).

In their brief herein petitioner and intervenor seem to recognize that they are not entitled to relief under CPLR 7803 (subd. 1) but urge that respondents have abused their discretion and that relief should be granted under subdivision 3 of CPLR 7803. Respondents' position in this proceeding is that they are limited by budgetary considerations as to the extent of the services which they can provide, and that to render the services which petitioner and intervenor seek would require elimination or undue curtailment of other services which respondents deem essential. In *Semple* v. *Miller* (38 A D 2d 174, 176) we said '' courts do not interfere with an administrative agency's course of action merely because another course might arguably be preferable, nor does a court attempt to impose on an agency its view of what constitutes sound administrative policy. Thus, a petition alleging arbitrary conduct should be dismissed where, as here, any reasonable explanation of the conduct can be found (24 Carmody-Wait, New York Practice 2d, § 145:318).'' In this regard see also *Goodman* v. *State of New York* (37 A D 2d 703).

Accepting the pleadings at face value, therefore, it appears that the petition and intervenor application should be dismissed. We are reluctant to make such order, however, in view of the fact that there has been no hearing in this proceeding. As noted in *Goodman* v. *State of New York* (*supra,* p. 704) '' This is not to deprive any patient of a remedy should it later develop that any particular patient has actually not been accorded proper services or facilities.'' The needs of the two children in this proceeding are indeed real, and our society may not, through its several agencies, nonchalantly assert that there is no way to care for them and that, therefore, because of their nature they or either of them should be incarcerated for the protection of the public. Despite the contentions and concessions in the pleadings herein, we believe that this matter should be remitted for an evidentiary hearing to ascertain more particularly the needs of petitioner and intervenor and the actual services which respondents are able to provide for them, and to determine whether respondents or any of them are acting arbitrarily or capriciously in denying to petitioner or intervenor, or both, necessary available services.

Since this proceeding was instituted the Family Court Act (§ 255) has been amended, effective July 1, 1972, to give to Family Court the authority to order any local or State agency or institution '' to render such information, assistance and cooperation as shall be within its legal authority concerning a child

who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act. The court is authorized to seek the cooperation of, and may use, within its authorized appropriation therefor, the services of all societies or organizations, public or private, having for their object the protection or aid of children or families ''. We recognize that by reason of the frustration confronting Family Court with respect to Miss Mitchell a year or more ago, this proceeding was instituted in the Supreme Court. In view of the quoted section of Family Court Act as amended, we believe that this proceeding should be transferred to the Family Court of Erie County, wherein the hearing above described should be conducted, after which Family Court, in light of the facts adduced at such hearing, may solicit and order such care, education and treatment of petitioner and intervenor, severally, as it may appear can appropriately be afforded to them. Action herein is urgent, and so Family Court should give this proceeding a preference and set it down for the hearing at the earliest possible date on which counsel can be ready.

The judgment should, therefore, be reversed and the matter transferred to Erie County Family Court for a hearing and further proceedings and action in accordance with this opinion.

GOLDMAN, P. J., MOULE, SIMONS and HENRY, JJ., concur.

Judgment unanimously reversed without costs and matter transferred to Erie County Family Court for a hearing and further proceedings in accordance with opinion by WITMER, J.