Donald **WALLACE** et al., Plaintiffs,

v.

Michael **KERN** et al., Defendants.

No. 72-C-898.

United States District Court,
E. D. New York.

March 7, 1974.

Stephen M. Latimer, Daniel L. Alterman, James Reif, Robert L. Boehm, William M. Kunstler, Center for Constitutional Rights, New York City, Alvin J. Bronstein, Nancy Crisman, National Prison Project, Washington, D. C., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of New York, for State defendants by Hillel Hoffman, Asst. Atty. Gen., New York City, of counsel.

Norman Redlich, Corp. Counsel, New York City, for City defendants by John P. Nachazel; Jeffrey Friedman, New York City, of counsel.

Mary D. Pickman, New York City, for N. Y. C. Bd. of Correction, amicus curiae.

Robert Herman, Brooklyn, N. Y., Legal Aid Society, amicus curiae.

JUDD, District Judge.

## MEMORANDUM OF DECISION

Plaintiffs in this class action have moved for a preliminary injunction to assure their right to a speedy trial or to release from custody.

### Facts

The action is brought on behalf of all felony defendants confined at Brooklyn House of Detention for Men (BHD) pending indictment, trial or sentence. Among numerous rights which the action seeks to enforce is the constitutional right to a speedy trial for persons held in custody because of their inability to provide money bail. The second amended complaint asks for the dismissal of charges or the release on their own recognizance of all criminal defendants who have not been tried within six months after their commitment.

The problem of trial delays in Kings County Supreme Court is one of long standing. Trial delays in the metropolitan counties were described in 1971 as "notorious" and "chronic," in an opinion by the Second Circuit Court of Appeals. United States ex rel. Frizer v. McMann, 437 F.2d 1312, 1315. The same court noted in 1973 that serious delays continued. Thorne v. Warden, Brooklyn House of Detention for Men, 479 F.2d 297 (1973). The New York Legislature early in 1972 (L.1972, c. 496, § 1) enacted a finding that "there is an emergency of grave dimensions in the processing of felony charge cases in the criminal courts in the metropolitan counties of the state." The legislature appropriated $6,700,000 to be used, with federal and

local funds, for an emergency felony case processing program.

In December 1972, there were 644 defendants who had been confined in BHD for more than six months. During the first three months of 1973, the Legal Aid Society obtained twelve acquittals of defendants who had been in jail for periods ranging from twelve to fourteen months. Four BHD inmates who testified in this court in April 1973, had been confined from thirteen to seventeen months awaiting trial.

On July 9, 1973, there were 707 persons named in indictments in Kings County Supreme Court who had been in custody for more than six months, and 210 of these had been in custody for more than a year. This represented almost 44 percent of the total 1,614 defendants in custody. Some of these were awaiting sentence, but the vast majority were awaiting trial.

A witness in Valvano v. Malcolm, 70–C–1390, testified in January 1974 that he had just been acquitted on a murder charge after being in jail in BHD for fourteen months. An affidavit for plaintiffs listed details concerning six inmates who had been held from eight to twenty months awaiting trial, in spite of an aggregate of fourteen speedy trial motions.

Trial delays are reflected in overcrowding of both BHD and QHD. Although the rated capacity of BHD is 840, it housed an average of 1,391 during 1973, or over 160 percent of capacity. Because of the overcrowding at BHD, there were 200 pretrial detainees on Kings County indictments housed in Queens House of Detention for Men (QHD), which was at 131 percent of capacity on July 9, 1973. Although both institutions were designed to hold one inmate in each cell, there was still double occupancy in almost all cells in QHD in January 1974 when the Warden testified before this court in the Valvano case. The occupancy of BHD had been reduced to 995 or about 125 percent of capacity by January 1974, but there was still double occupancy of a large proportion of the cells. The cells are approximately five feet by eight feet in dimensions.

The New York City Board of Correction in its amicus curiae brief cites a number of cases involving detainees, which serve to highlight the impact of lengthy pretrial confinement.

After being held in jail for twenty-two months, "W" pleaded guilty on June 13, 1973 to a robbery charge. He has been released on $250 bail, with the expectation that he would be placed on probation. His case had been marked ready and passed fifty-five times. While in jail, he was severely beaten by other inmates, and sustained a shoulder injury, from which he still suffers.

"M" was in jail for nineteen months before pleading guilty on June 14, 1973 to a robbery charge, at a time when he claimed to have lost contact with witnesses who might have aided him.

"Harold S." was in jail for twenty-one months and had attempted suicide during a period of despondency, before he finally pleaded guilty on June 29, 1973 to manslaughter.

"Herbert S." was in jail for sixteen months before pleading guilty on May 9, 1973 to third degree robbery. Only after his plea was he transferred to Rikers Island, where he received hospital treatment for swollen glands from which he had suffered for over six months.

"D" was in jail for eighteen months before obtaining a Wade hearing, which was followed by a guilty plea to a reduced robbery charge on June 19, 1973. In spite of his plea, he still maintains his innocence.

*State Court Remedies*

Efforts at relief in the state courts have been largely unsuccessful. Under the leadership of Chief Judge Fuld, the Administrative Board of the Judicial Conference on May 3, 1971 adopted a speedy trial rule, which would have required release after ninety days in custody without a trial, except in homicide cases. 22 NYCRR 29.1–29.7. This rule was not to become effective until May 1, 1972. Before then the legislature enacted its own plan, requiring only that the

People be ready for trial within ninety days, the legislature stating that its enactment "shall be deemed to supersede any rule of the Administrative Board of the Judicial Conference." CPL § 30.30, as amended by L.1972, Chap. 184, effective April 28, 1972.

Following the enactment of Section 30.30, the Legal Aid Society attempted to secure the release of detainees in custody more than six months. William Gallagher, Director of Court Operations for the Legal Aid Society, testified that in the summer of 1972 the Society brought 400 speedy trial motions before the Appellate Division, Second Department, that the Acting Presiding Justice directed a conference with the District Attorney concerning bail, that a Supreme Court Justice released 202 defendants on their own recognizance or low cash bail, but denied the other motions, and that no trial dates were set for the other defendants.

After being unsuccessful in the Appellate Division, the Legal Aid Society took four test cases to the New York Court of Appeals, which on February 16, 1973 directed that the cases be granted a trial preference to assure the commencement of trial within three months thereafter. People ex rel. Franklin v. Warden, 31 N.Y.2d 498, 341 N.Y.S.2d 604, 294 N.E.2d 199. The Court said (31 N.Y.2d at 502–504, 341 N.Y.S.2d at 607–608, 294 N.E.2d at 201):

> we recognize that the four cases now before us are typical of the vast pretrial felony backlogs in the County of Kings and perhaps to a lesser degree in other metropolitan counties . . .
> It may be urged that the disposition we make in the cases now before us is unfair to other detainees similarly situated in Kings County. We would only note that it does not appear that all or any of such other detainees actually desire to go to trial . . .
> The ultimate remedy must be provision by the appropriate branches of government of the material and personal resources required to handle a court burden increased and increasing. . . .

The obstacles to obtaining a speedy trial are aggravated by various practices in Kings County Supreme Court. (1) The District Attorney can pick any one of the first forty cases on the calandar in a part to bring to trial, while a defense counsel cannot be adequately prepared on more than a few cases at a time. While the Deputy Chief of the Supreme Court Bureau in the District Attorney's office testified that Legal Aid receives notice from forty-eight hours to a week before a case is brought to trial, the court finds that his directions to this effect are not generally followed. (2) Compensation to private attorneys assigned under Article 18–B of the County Law is still limited by statute to $15.00 an hour for court time and $10.00 an hour for out-of-court time; but even this amount is usually cut. They are thus discouraged from making speedy trial motions. The Administrator of the Indigent Panel for the Second and Eleventh Judicial Districts testified that attorneys almost never receive the dollar amount requested on an hourly basis. (3) There is no provision for supervision of 18–B attorneys by any experienced attorney.

It may be noted, however, that the burden on the Legal Aid Society staff has been reduced since this court's order of May 10, 1973. Administrative Justice Vincent D. Damiani of the Criminal Part, Kings County, testified on July 25, 1973 that Legal Aid was not being assigned new cases until the suggested standard of not more than forty felony cases per lawyer was met.

Under existing calendar practice, as described by Samuel Dawson, Associate Attorney in charge of the Supreme Court office of Legal Aid Society in Kings County, the fact that a case is marked ready and passed does not necessarily mean that the District Attorney is ready, but is simply a formal method of compliance with the readiness rule.

"The system isn't working," according to Peter Purvis, Deputy Director of Operations for the Legal Aid Society. Everything is being done which the facili-

ties permit, but defendants still are not being tried promptly.

### Effects of Prolonged Pretrial Detention

Prolonged detention creates various types of harm for defendants. One problem is the inducement to plead guilty rather than wait for trial, as mentioned by Mr. Justice Thomas R. Jones in his testimony. Professor Bernard Segal of Golden Gate University testified that prolonged pretrial incarceration involves (1) loss of an irretrievable right to freedom, (2) lack of compensation for lost time if found innocent, (3) excessive anxiety and concern, (4) substantial impairment to the right of counsel, with a tendency to rely on other inmates as lawyers' visits become less frequent and less constructive, (5) personal hardship resulting from the inability to keep a job open and the strain on family relationships, and (6) coercion to accept a guilty plea rather than to claim a defendant's full constitutional rights or even to assert believable defenses. He pointed out that deterioration of a detainee accelerates materially after three months, with family visits becoming less frequent. Dr. Sheldon Cholst, a psychiatrist with the Prison Health Service at BHD, testified that prolonged pretrial confinement creates tremendous anxiety, a tendency to become hardened and embittered, a suicide rate 25 times as high as the general population, and twice as many breakdowns as the general population. There is no way of earning money at BHD, no cigarettes are supplied to people without funds, and there is pressure to enter homosexual situations in order to obtain small amounts of money. According to Dr. Cholst, the psychological situation of state prisoners who know the length of their sentences is much better than that of detainees who are uncertain of the time or consequences of trial. The testimony of Professor Segal and Dr. Cholst was not effectively impeached or contradicted, and is accepted by the court as true.

### Improvements to Date

The court has given full consideration to the fact that more than six months have elapsed since the close of the hearings. The necessary deliberation and preparation of this decision have been unduly delayed by an accumulation of other urgent motions and cases and by an almost continuous series of trials. The continuance of the problem is indicated by a number of facts, including the testimony received during January and February 1974 in two class actions involving inmates both at BHD and QHD. Jenkins v. Malcolm, 73–C–261; Valvano v. Malcolm, *supra*. Some of this testimony has already been mentioned.

The flow of speedy trial habeas corpus petitions to this court from Kings County defendants has continued during late 1973 and early 1974. The fact that they were filed *pro se,* by inmates who have counsel, appears to reflect a belief by counsel that state courts do not provide an effective remedy. The writer's share of such petitions has included at least four where pretrial confinement ranged from twelve to seventeen months, four others where the total period in custody has not been checked, and one which challenged a guilty plea as having been coerced by pretrial delay.

In fact, during the time this memorandum was being drafted, the District Attorney's office had just begun the trial of a defendant in custody since December 1972, whose trial after fourteen months was precipitated by an order of this court dated January 30, 1974 directing his release on his own recognizance unless his trial began before March 1, 1974. United States ex rel. Jerome Perry v. Warden, Brooklyn House of Detention (73–C–1666).

The number of criminal parts was increased during 1973 so that there are now thirty-one parts in the criminal term, some of them operating on a twelve-month basis. During 1973, the number of indictments in Kings County also decreased, a fact which should give an ultimate potential of reducing trial delays. Monthly meetings are held on overcrowding and trial delay, attended by the Administrative Judge for the Criminal Part in Kings County, the Ad-

ministrative Judge for the Supreme Court in Staten Island, the Chief Probation Officer and representatives of the District Attorney's office, Legal Aid Society, the Correction Department, and ancillary services.

A current comment on the Criminal Calendar in Kings County is contained in "From the Editor's Desk" in the March 1974 issue of the *Brooklyn Barrister* (Vol. 25, p. 99):

> The Criminal Term Parts have no calendar numbers and the District Attorney is responsible for selecting and moving cases for trial. The office of the District Attorney has been obliged to increase its staff but even so seems to be unable to promptly move cases for trial. Judges willing and anxious to try cases must still await the pleasure of the District Attorney.

When this court's Law Clerk assigned to this case visited the Supreme Court on March 4, 1974, he examined the ready calendar for four parts. In three of the four parts, more than 50 percent of the cases marked ready involved indictments filed in 1972 or earlier. The figure for the fourth part was 48 percent. In the four parts, there were 105 pre-1973 cases awaiting trial, only 67 cases involving 1973 indictments, and only 4 involving 1974 indictments. This is an improvement from the situation a year ago as noted in this court's memorandum of May 10, 1973 (p. 6), but it still falls far short of speedy trials. Of the calendars for 28 parts examined, only one had a 1973 case at the top of the list.

The Law Journal listings for criminal cases in Kings County do not give calendar numbers for criminal cases, as they did a year ago, although calendar numbers are listed for all civil cases.

Chief Judge Charles D. Breitel has initiated steps which may be ameliorative by designating, in cooperation with the four Appellate Divisions, an Administrative Judge for the entire state, and by obtaining the concurrence of the First and Second Department Appellate Divisions in designating Justice David Ross as City Administrative Judge. N.Y.L.J.

February 28, 1794, p. 4. It is impossible, however, to predict how long it may take the new machinery to correct conditions which have existed for a considerable period of time in Kings County Supreme Court.

### Discussion

█ Over-long confinement without trial is a denial of constitutional rights. The Sixth Amendment right to "a speedy and public trial" is now applicable to the states. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1 (1967).

█ "Speedy" is a relative word, which may properly be interpreted differently for one who is confined in jail than for one who is at large. Since an unconvicted defendant in a detention facility actually enjoys fewer amenities than a convicted prisoner in a correctional institution, over-long confinement without being convicted, simply for being poor, is also a denial of due process of law. Rhem v. Malcolm, 371 F. Supp. 594 (S.D.N.Y.1974); Inmates of Suffolk Co. Jail v. Eisenstadt, 360 F. Supp. 676 (D.Mass.1973); Inmates of Milwaukee Co. Jail v. Petersen, 353 F. Supp. 1157 (E.D.Wis.1973); Brenneman v. Madigan, 343 F.Supp. 128 (N.D.Cal. 1972).

Defendants assert that relief cannot be given in this action until each individual defendant has exhausted his state rights. However, this is not the sole test under 28 U.S.C. § 2254. Subdivision (b) specifies:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process *or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner*. (Emphasis supplied).

As pointed out above with respect to the *Franklin* case, a year's effort by the

Legal Aid Society resulted in only four prisoners being granted trial preferences effective after more than nine months of confinement. People ex rel. Franklin v. Warden, 31 N.Y.2d 498, 341 N.Y.S.2d 604, 294 N.E.2d 199 (1973). State court remedies have not substantially reduced detention times.

■ This is a situation where the federal court may dispense with the process of "waiting for Godot." St. Jules v. Beto, 462 F.2d 1365, 1366 (5th Cir. 1972). Individual cases might obtain relief in the state courts, for the New York Court of Appeals has recognized that a person may not be subjected to "a greater deprivation of personal liberty than necessary to achieve the purpose for which he is being confined." Kesselbrenner v. Anonymous, 33 N.Y.2d 161, 350 N.Y.S.2d 889, 892, 305 N.E.2d 903, 905 (1973). Individual action on behalf of hundreds of indigents has proved to be an ineffective remedy, however, in the state courts.

The hostility of New York State courts to class actions makes it impossible to obtain effective state relief where a large number of prisoners are suffering similar loss of rights. In Gaynor v. Rockefeller, 15 N.Y.2d 120, 256 N.Y.S.2d 584, 204 N.E.2d 627 (1965), the Court of Appeals sustained the dismissal of a class action by Negro citizens of New York against labor unions in the construction industry in spite of

> . . . a grave and continuing breach by the defendant unions of the laws and declared policy of this State against the reprehensible practice of discrimination on racial grounds in the area of employment and employment opportunity.

15 N.Y.2d at 128, 256 N.Y.S.2d at 589, 204 N.E.2d at 630. See also Hall v. Coburn Corp., 26 N.Y.2d 396, 311 N.Y.S.2d 281, 259 N.E.2d 720 (1970).

On the basis of the *Gaynor* case, a suit challenging state facilities for the treatment of the mentally retarded in the Buffalo area was dismissed on the ground that it was not a proper class action, although Mr. Justice Walter J. Mahoney had found that the problems of the named plaintiffs were not unique but were comparable to those of hundreds of others. Usen v. Sipprell, 71 Misc.2d 633, 336 N.Y.S.2d 848 (Sup.Ct. Erie Co. 1972), rev'd, 41 A.D.2d 251, 342 N.Y.S.2d 599 (4th Dept.1973).

Professor McLaughlin in his Supplementary Practice Commentary on NYCPLR § 1005, McKinney's, Vol. 7B, pp. 74, 76 (Cumulative Annual Pocket Part), stated:

> The Court of Appeals' most recent contribution to the law of class actions leaves the darkness largely unobscured. . . .

> These cases highlight the chaotic and incomprehensible state into which class actions have fallen in this state.

Class actions are as much of a burden to the federal courts as they would be to the state courts, but, in the language of Judge Jack B. Weinstein of this court, addressing a symposium of the Judicial Conference of the Fifth Circuit on the alleged abusiveness of class actions, 58 F.R.D. 299, 305 (1973),

> Either we are committed to make reasonable efforts to provide a forum for the adjudication of disputes involving all our citizens . . . or we are not.

Defendants contend that the relief requested is barred by Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L. Ed.2d 439 (1973). *Preiser*, however, merely held that the exhaustion requirement of 28 U.S.C. § 2254(b) in a habeas corpus proceeding could not be avoided by labelling the proceeding as a civil rights action under 42 U.S.C. § 1983. In the present case, however, the court has determined that, even if the case is properly cognizable only as a habeas corpus action, the exhaustion requirements of Section 2254(b) have been met, to the extent of a showing that state remedies are ineffective.

*Preliminary Injunction*

■ In determining a plaintiff's right to a preliminary injunction, the court should consider the degree of likelihood of ultimate success on the merits, and the relative hardships to both par-

ties.  Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

The facts, developed at hearings which have been so extensive that they almost constitute the basis for a final determination, show that ultimate success on the merits is likely.  The irremediable hardship on plaintiffs from prolonged incarceration is evident.  The risk to the defendants and the public from the release of a dangerous defendant or one who may abscond, can be avoided by providing appropriate procedures and personnel to bring him to trial promptly.

■ Normally, a preliminary injunction is used to preserve the *status quo*, but sometimes a mandatory injunction is necessary where, as then Circuit Judge Taft stated in Toledo, A.A. & N.M. Ry Co. v. Pennsylvania Co., 54 F. 730, 741 (C.C.N.D.Ohio 1893),

> .  .  . it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from.

■ The extent of amelioration of trial delays since the case began is not decisive on the right to a preliminary injunction.  If the defendants in this case can show that the constitutional rights of pretrial detainees in Kings County are being protected when this case is ready for final decision on the merits, they may argue against the necessity of converting the preliminary injunction into a permanent one.  This court should not delay, however, in enforcing the federal rights of such detainees at this time.  The effect of the *Franklin* case on the question of abstention was treated in this court's memorandum of February 27, 1973 (p. 10), but what has already been said shows that this is not a proper case for abstention.

*Dismissal of Indictments*

■ Plaintiffs seek not only a prompt trial, but dismissal of indictments where a prompt trial is not granted.  The latest rules on the constitutional requirement of a speedy trial were set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).  One of the four factors enumerated in Barker v. Wingo is prejudice to the defendant.  The Court recognized three aspects of prejudice, namely, oppressive pretrial incarceration, anxiety and concern, and possible impairment of the defense, and stated that the last was the most serious.  The right to release relates to the oppressive character of pretrial incarceration and to anxiety and concern.  The right to dismissal relates to the impairment of the defense.  The degree of impairment of defense varies with the circumstances, more than the other aspects of prejudice.  The oppressive character of prolonged incarceration does not differ vitally among different defendants, and therefore is particularly appropriate for relief in a class action.  Without saying that a federal class action for dismissal of old indictments cannot be sustained under proper circumstances, it appears to the court that dismissal is not appropriate preliminary relief in this action.

*Possible Exceptions to the Proposed Order*

■ There may be instances where there is a special reason for permitting a defendant to be confined more than six months before trial; for example, if he is charged with murder for profit.  On the settlement of the order the court will consider whether any exception from the requirement of speedy trial should be made, and if so whether this should be by general sub-classes, or should be left to individual determination, and whether a federal court should be concerned with individual exceptions.

The speedy trial rule proposed by the Administrative Board of the New York Judicial Conference in 1971 contained

several exceptions, but they related to a ninety day limit on custody. This memorandum proposes a limitation which is really seven and one-half months between arrest and trial. Exceptions from such a rule are less justifiable.

A period of time should be granted for the state to conform its procedures with the speedy trial requirements now being announced by this court.

The court will grant a preliminary injunction directing that all defendants who have been held in custody for more than six months without trial be brought to trial within forty-five days after a written request or released on their own recognizances, but providing that the order shall apply immediately only to defendants who have been held in custody for a year or more; that it shall apply forty-five days after this date to defendants who shall have been held in custody for nine months or more; and that it shall apply ninety days after this date to all defendants who shall have been held in custody for more than six months. No bond should be required as a condition (F.R.Civ.P. 65(c)) to the preliminary injunction.

Settle order on three days' notice.